UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DIRECTV, INC., a California corporation,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>DAVID A. FOWLER,<br><br>　　　　　　　　Defendant. | Case No.  04-5313 KLS<br><br>ORDER GRANTING DEFAULT<br>JUDGMENT AGAINST DEFENDANT |

　　　The plaintiff filed a motion on June 24, 2005 (Dkt. #69) requesting sanctions for spoliation of evidence on the defendant's hard drive which was ordered produced by this court on May 10, 2005.  The defendant filed his reply on July 8, 2005 (Dkt. #84) and the plaintiff filed its response on July 14, 2005. (Dkt. #85).

　　　After reviewing all the pleadings, this court concludes that the defendant intentionally manipulated his hard drive which effectively "wiped" any evidence from his hard drive.  This court is therefore granting the plaintiff's motion for sanctions for spoliation of evidence by striking the defendant's answer to the complaint and granting default judgment in favor of the plaintiff for the claims it raised in its motion for summary judgment. (Dkt. #62).  According to the plaintiff's request in its motion for summary judgment, it would dismiss all other claims if the court were to grant its motion.   Accordingly, the trial date of August 15, 2005 is hereby stricken.

## FACTUAL BACKGROUND

The plaintiff filed its complaint against the defendant on May 28, 2004. In its motion for summary judgment (Dkt. #62) the plaintiff alleged that the defendant "purchased, used, and/or distributed multiple Pirate Access Devices - "emulators," "programmers," and "Virgin HU Cards" - to surreptitiously intercept, decode, and view, and assist others in intercepting and viewing, DIRECTV's satellite programming. It sought judgment on its claims that the defendant both intercepted its broadcasts, and trafficked in devices ("Pirate Access Devices") designed to facilitate unauthorized interception of its broadcasts." (Dkt. #62, pages 1 and 2). The plaintiff further asserted that the defendant "violated 47 U.S.C. § 2511(1)(a) and (2)(d) by endeavoring to intercept, and assisting others to intercept, DIRECTV programming without authorization or payment. He has also violated 47 U.S.C. § 605(a) and (e)(4) by using, selling, or otherwise distributing devices that he knew were either primarily of assistance in the unauthorized decryption of satellite signals or intended for use in violation of 47 U.S.C. §605(a), or both."

The defendant filed an answer in which he denied the plaintiff's allegations and he has been representing himself in this action.

The plaintiff filed its first discovery request on February 2, 2005. (Dkt. #70). Request for Production No. 14 requested production of "all computer hard drives from any computers that you own or make use of for inspection by DIRECTV, Inc." The defendant objected to this request. In its initial discovery request the plaintiff included "Special Instruction Regarding Electronic Data" specifically warning the defendant that he do nothing to modify, delete or destroy any electronic data files existing at the time of the discovery requests. (See Exhibit A to Declaration of Stacie Foster, Dkt. #70).

The parties were not able to reach an agreement regarding production of the defendant's computer hard drive(s). The defendant filed a motion for protective order (Dkt. #29) on March 30, 2005. He objected to the production of his hard drive based on the work product doctrine. He did, however, agree to "allow the court to review anything 'in camera' or allow a professional to search Defendant's PC, with a request for specific data under the rules governing search warrants if the court deems this as necessary." (Dkt. #29, page 3, line 25 through page 4, line 2). In addition, he told the court that his hard drive "contains the files that I have written and all of their various drafts for my motions and answers in this case." (Dkt. 29, page 4, lines 11-12).

The plaintiff also filed a motion to compel discovery on April 15, 2005. (Dkt. #46). The first item requested in the motion was production of "each and every hard drive in his possession or to which he has access." (Dkt. #46). On April 21, 2005 the defendant filed his response to the motion to compel. (Dkt. #53). Mr. Fowler again objected to the production of his hard drive under the work product doctrine. He affirmatively advised the court that his hard drive "contains the files that he has written and all of their various drafts for motions, answers, responses, and research in this case. Many documents reside there that consist solely of Defendant's opinions and thought processes as he drafted motions and answers and thus are 'opinion work product beleaguered.'" (Dkt. #53, page 3, lines 1 through 4, see also Dkt. #54, Declaration of David Fowler, page 4, lines 5 through 8).

On May 10, 2005 this court ordered the defendant to produce his hard drive for review by an independent computer specialist. (Dkt. #57). In addition, the court went to great lengths to set forth protocol to be followed in order to protect the work product being claimed by the defendant. The court also prohibited the defendant from wiping, destroying or otherwise secreting any information stored in his hard drive(s) so long as the present litigation is pending. (Dkt. #57, page 4, lines 21 and 22).

The defendant complied with the court's order to produce his hard drive for review by an independent computer specialist. The specialist received the hard drive on May 19, 2005. (Declaration of William J. Thorn, Dkt. #71). Based on his review, the expert determined that the defendant ran a Disk Defragmentation program on April 11, 2005. According to the expert, running the Disk Defragmenter on April 11, 2005 "accessed and rearranged over 33,000 files and moved the data from those files into consecutive clusters, thus overwriting any unallocated clusters that may have been present." (Dkt. #71, page 5). In other words, the use of the Disk Defragmentation program overwrote the data from thousands of deleted files. (Dkt. #71, Exh. B, page 7). The expert went on to state that "[o]n April 12, 2005 and again on April 13, 2005, large amounts of data were once again moved, copied, and deleted on the computer hard drive, further obscuring and overwriting data on the unallocated disk space." (Dkt. #71, page 5). The expert concluded that the actions of the defendant were "a crude, but effective disk wiping process intended to prevent me from accessing any pertinent information that may have been contained in the unallocated clusters." (Dkt. #71, pages 7 and 8). The expert further concluded that "had these deleted files not been overwritten by the process described in paragraph 32, I would have been able to access and

view most, if not all, of the original filenames, creation dates, and the contents of those files.  With the means at my disposal, I am presently unable to view, access, or reconstruct the wiped files on Drive1." (Dkt. 371, page 8).

In his declaration dated April 29, 2005 the defendant admitted he reformatted his computer "in late May of 2004 when he moved to his new house in Puyallup."  (Dkt. #54, page 3, lines 15 and 16).  He made absolutely no mention of running a Disk Defragmentation program only 18 days earlier.

Additionally, the hard drive evidenced manipulation of the computer's "clock cycle" to show "create dates" of June, August and December 2005.  The defendant manipulated the clock cycle to reflect imaginary file creation dates in the future yet those same files showed "last accessed" dates of April 2005. (Dkt. #71, Exh. B, page 6).

This court can only conclude that the defendant's actions were a deliberate as well as a successful attempt to overwrite any data that had been stored on the hard drive.  This court further concludes that this was done for the purpose of destroying any evidence that may have existed on the hard drive.  Due to the defendant's actions, the expert was unable to access and view files on the computer's hard drive.  In fact, the expert found absolutely no evidence of any of the work product which the defendant continuously asserted was located on his hard drive.  This court also concludes that the defendant is an advanced computer operator and the repeated manipulation of the data in the hard drive was intentional and in violation of the defendant's clear obligation not to destroy or manipulate potential evidence.

The plaintiff's expert also found pornographic images on the hard drive and he reported this information to the Puyallup Police Department.  The defendant was subsequently interviewed by Detective Tamera R. Pihl of the Puyallup Police Department regarding the images on his hard drive.  The defendant told her that "he had downloaded the potentially unlawful images because he was angry that he had to turn over his hard drive to DIRECTV.  Therefore, he downloaded thousands of images the weekend prior to sending the hard drive to DIRECTV and copied those files in a number of different locations on his computer hard drive." (Dkt. #72). This downloading occurred, therefore, on May 14 and 15, shortly after this court's order which directed production of the hard drive.

The defendant, in his response to the motion for sanctions, did not deny the statements made to Detective Pihl.  He also did not give any explanation as to why the expert found none of the work product

which the defendant worked so hard to protect. As recently as April 29, 2005 the defendant, in his declaration, told this court that his hard drive still contained his protected work product. (Dkt. #54, page 3).

Finally, the order from the court made it clear that he was not to "'wipe,' destroy, or otherwise secret any information stored in his hard drive(s) as long as the present litigation is pending." (Dkt. #57, filed on May 10, 2005). Based on his admission to Detective Pihl, he manipulated the information on his hard drive after he received the court order. This was done in violation of the court's order and the defendant knew it.

## RELEVANCE OF THE REQUESTED DISCOVERY

In its motion to compel discovery, the plaintiff set forth the reasons why it should be allowed access to the defendant's hard drive. (Dkt. #46, page 5). The plaintiff alleged that "most of the purchase of pirate devices and piracy software were made using the Internet; thus, records of those transactions will be available on a defendant's hard drive. . . . In addition, the software script which is used to 'load' the piracy devices to de-encrypt the satellite signals is often downloaded through the internet, using a personal computer. Traces of software code will remain on the defendant's hard drive, and will be discoverable using non-invasive testing on the hard drives. Thus, a search of the hard drive may yield compelling evidence of piracy." (Dkt. #46, page 5). It is also clear that the lack of such information on the defendant's hard drive would go a long way to proving his defense to the plaintiff's claims. This court agreed that the request by the plaintiff was for discovery of relevant information. Therefore, this court must next consider the appropriate sanction to be imposed for the defendant's deliberate actions.

## APPROPRIATE SANCTIONS

Having concluded that the defendant wilfully, intentionally and knowingly destroyed potentially relevant evidence, this court must determine the appropriate sanction.

Fed. R. Civ. P. 37(b)(2)(C) provides in relevant part that if:

> [A] party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, [including] . . . [a]n order striking out pleadings or parts thereof . . . or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

In this instance, this court issued an order to the defendant directing him to provide his hard drive

to the computer expert and further prohibited the defendant from manipulating the information on his hard drive during the pendency of the litigation.  The defendant admitted to the detective from the Puyallup Police Department that he downloaded potentially unlawful images on his computer because he was "angry he had to turn over his hard drive to DIRECTV." (Dkt. #72).   He admitted to doing this the weekend before he turned his computer over to the expert, which was received by the expert on May 19, 2005.  This was clearly done in violation of this court's order of May 10, 2005.

However, the testimony of the computer expert, William J. Thorn, leads this court to the conclusion that the defendant significantly manipulated his hard drive prior to this court ordering its production.  Therefore, this court will make its decision as to the appropriate sanctions on a basis other than a violation of Fed. R. Civ. P. 37(b)(2)(C).

## DISTRICT COURT'S INHERENT POWERS

District courts "are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Unigard v. Security Insurance Co. V. Lakewood Engineering & Manufacturing, Corp., 982 F.2d 363, 368 (9th Cir. 1992) (citations omitted).  An example of these inherent powers is the discretionary power of a federal trial court to levy appropriate sanctions against a party who prejudices its opponent through the spoliation of evidence that the spoliating party had reason to know was relevant to the litigation.  Glover v. Bic corporation, 6 F.3d 1318 (9th Cir. 1993).  This authority of the district court is separate and distinct from its "power to dismiss a complaint because of noncompliance with a production order," which "depends exclusively" on Fed. R. Civ. P. 37.  Fjelstad v. American Honda Motor Co., Inc., 762 F.2d 1334, 1338 (9th Cir. 1985).  Thus, it may be used "to impose sanctions for discovery abuses that may not be a technical violation of the discovery rules." Halaco v. Engineering Co., 843 F.2d 376, 380 (9th Cir. 1988)

In order to sanction a party to litigation for spoliation of evidence the Court must first determine whether or not there was a duty to preserve the evidence at issue.  Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991).  If a duty existed, the Court must also consider the prejudice suffered by the non-spoliating party and the level of culpability of the spoliator.  After considering these factors, a Court must then consider all available sanctions and determine the appropriate one. *See, e.g.,* Fujitsu Ltd.

v. Federal Express Corp., 247 F.3d 423 (2nd Cir. 2001); Wm. T. Thompson Co. v. GNC, 593 F. Supp. 1443 (C.D. Cal. 1984).

### Duty to Preserve Evidence

The first issue this court must decide is whether the defendant had a duty to preserve the evidence or potential evidence contained on his hard drive. "[A] party is on notice once it has received a discovery request. Beyond that, the complaint itself may alert a party that certain information is relevant and likely to be sought in discovery." Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D. N.Y. 1991). In addition, '[t]he obligation to retain discoverable materials is an affirmative one," and thus "'[w]here one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable inferences in favor of the aggrieved party." National Association of Radiation Survivors v. Turnage, 115 F.R.D. 543, 557-58 (N.D. Cal. 1987).

In this case the defendant knew as early as February 2005, that his hard drive may contain relevant information which the plaintiff wanted reviewed by an independent computer expert. He was also advised not to do anything to affect the information contained on his hard drive. The defendant resisted production of his hard drive until ordered to do so by this court. The basis for his objection was that his computer contained his work product related to this litigation. Mr. Fowler knew that he was prohibited from doing anything that would "affect" the information contained on his hard drive. The actions he took to manipulate the information on his computer was for the sole purpose of preventing the expert from finding any relevant information on his hard drive. Mr. Fowler seems to believe that since it was his computer he can do anything he wishes, even if the computer may contain information relevant to this litigation. His belief is dead wrong. He clearly had a duty to maintain the integrity of the information on his hard drive and he chose to violate that duty.

### Prejudice to Non-Spoliating Party

Next, the court must determine whether DIRECTV was prejudiced by the defendant's actions. It is clear to this court that the "wiping" of the hard drive caused prejudice to the plaintiff. As explained by the Eighth Circuit:

> [o]bviously, the relevance of and resulting prejudice from destruction of documents cannot be clearly ascertained because the documents no longer exist. Under the circumstances, [the culpable party] can hardly assert any presumption of irrelevance as to the destroyed documents. On this record, the

> district court properly could have imposed the most severe sanctions upon [the culpable party]–dismissal of its claims and default judgment.

Alexander v. National Farmers Org., 687 F.2d 1173, 1205-06 (8th Cir. 1982).

"It is familiar doctrine that if a party fails to produce from within its control evidence that is relevant and material, the fair inference is that that evidence would have weighed against the party who held it back. *See Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 350-351, 29 S.Ct. 370, 379-380, 53 L.Ed. 530 (1909); *Ohio v. Arthur Andersen & Co.,* 570 F.2d 1370, 1374-1375 (10th Cir. 1978). *A fortiori,* where a party destroys evidence after being put on notice that it is important to a lawsuit, and being placed under a legal obligation to preserve and produce it, the compelling inference is that the evidence would have supported the opposing party's case." Computer Associates International, Inc. v. American Fundware, Inc., 133 F.R.D. 166, 169-70 (D. Col. 1990).

The information on the hard drive would have proven either the plaintiff's case or the defendant's case. That is, if the expert found evidence of pirating activities on the defendant's hard drive that would prove the defendant violated the law as alleged by DIRECTV. On the other hand, had the computer expert found nothing, that would have clearly supported the defendant's position that he was doing everything to comply with the law. The hard drive held the answer. That answer has now been obliterated by the deliberate manipulations of the defendant. Neither the plaintiff nor this court will know what was on the hard drive at the time this litigation began or at the time the request for production was served.

### Level of Culpability of the Spoliator

Finally, this court must determine the level of culpability of the defendant regarding his actions of "wiping" the hard drive. This court concludes, by clear and convincing evidence, that the defendant is skilled in the manipulation of computers and knew that the steps he took, as described by the expert, would result in his hard drive being "wiped." He know that his actions would prevent the expert from finding any evidence relevant to this litigation. The defendant's actions were deliberate, intentional and done in bad faith.

### Determination of Appropriate Sanction

Next, the court must determine what sanctions are appropriate. Sanctions may include the exclusion of evidence at trial, the giving of an adverse inference instruction against the spoliator to the jury,

a fine or imposition of monetary sanctions, or striking the answer and the entry of a default judgment. Sanctions are meant to serve the dual purpose of punishment and deterrence. Punishment to the violator and deterrence to others who may be considering similar conduct. In this instance, less drastic sanctions serve no useful purpose. The exclusion of any evidence is futile as the defendant has effectively prevented the plaintiff from obtaining relevant evidence.

Fashioning a jury instruction that creates an presumption in favor of the plaintiff is not a sufficient sanction for the deliberate and knowing actions taken by the defendant which prevented the recovery of any relevant evidence which was under his complete and total control.

Finally, the imposition of a fine or sanctions, while being a form of punishment, is also an insufficient response by the court in light of the deliberate actions taken by the defendant.

In determining whether to enter a default judgment and dismiss a case under its inherent powers, the district court must consider:

> (1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions, (4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case, and finally, as optional considerations where appropriate, (5) the prejudice to the party victim of the misconduct, and (6) the government interests at stake.

Halaco v. Engineering Co., 843 F.2d 376, 380 (9th Cir. 1988). The court has essentially addressed the first five elements in its discussion above. This court concludes that there is no alternative appropriate sanction short of striking the defendant's answer to the plaintiff's complaint and entering a default judgment against the defendant. Any lesser sanction would reward the defendant for his actions by severely restricting evidence the plaintiff could have presented at trial. However, in light of the fact that the plaintiff filed a motion for summary judgment on specific claims and advised the court it would dismiss all other claims not addressed by its motion for summary judgment, this court believes that the default judgment should be entered only as to the claims addressed in the plaintiff's motion for summary judgment and any claims not addressed in the summary judgment motion shall be dismissed.

IT IS HEREBY ORDERED:

1. The defendant's answer to the plaintiff's complaint is hereby stricken and default judgment is entered on behalf of the plaintiff as to the claims raised in the plaintiff's motion for summary judgment.

   2. Claims made by the plaintiff and not addressed in its motion for summary judgment are hereby dismissed.

   3. The plaintiff's motion for summary judgment (Dkt. #62) and the defendant's motion for summary judgment (Dkt. #68) shall be removed from the court's motion docket.

   4. The trial date of August 15, 2005 is hereby stricken.

   5. The plaintiff is directed to file supplemental pleadings setting forth the specific relief it is requesting in light of this court's order. Any request for attorney fees and costs should be supported by appropriate documentation. The plaintiff's pleadings shall be filed no later than August 19, 2005 to include a noting date of September 16, 2005. The defendant shall file his response no later than August 31, 2005. The plaintiff shall file its response, if any, no later than September 12, 2005.

   6. The clerk is hereby directed to mail a copy of this order to the defendant.

Dated this 15th day of July, 2005.

                                            Karen L. Strombom
                                            United States Magistrate Judge